BALMER, C.J., concurring.
I agree completely with the majority opinion and its conclusion that the individual direct sellers whose employment status is at issue here are not independent contractors under ORS 670.600 and do not come within the in-home sales exemption from employment under ORS 657.087(2). The majority correctly holds that ACN Opportunity, LLC is an "employer" of those individuals and is required to pay unemployment insurance taxes on earnings that ACN paid to them for their sales work.
I write separately to urge the legislature to consider revising some of the many statutes that regulate the relationship between those who perform work and those individuals or businesses who pay them, in light of the far-reaching changes that have occurred in the workplace and in the economy over the last two decades. Increasingly, individuals who perform work for other individuals or for businesses are entering into relationships that are different from our traditional notions of "employee" and "independent contractor." See, e.g. , Seth D. Harris & Alan B. Krueger, A Proposal for Modernizing Labor Laws for Twenty-First-Century Work: The "Independent Worker" 5 (2015) (suggesting new category of " 'independent workers,' who occupy a middle ground between traditional employees and independent contractors"). Courts and government agencies responsible for applying existing law to those different forms of the work relationship often must fit a square peg into a round hole. As a result, in some cases workers may fail to receive workplace protections or benefits that the legislature believes are appropriate, while in others, application of rules intended for an *732 earlier time may thwart experimentation or the development of new employment models.
This case is illustrative. ORS 657.087(2) provides an exemption from an employer's obligation to pay unemployment taxes on compensation which consists of commissions "on orders solicited or sales resulting from the in-person solicitation of orders for and making sales of **848 consumer goods in the home." As the majority opinion explains, that exemption was enacted in 1977 to exempt income from "Tupperware" parties. That was also the era of the "Avon lady" and the "Fuller Brush man"-both of whom also sold products through in-person solicitation and "in the home." Of course, 1977 was before cell phones, internet (no Facebook, Craigslist, or eBay), and ubiquitous coffee shops (with wifi) holding themselves out as remote offices where a seller of goods or services might conduct business online or meet with a customer or client. The requirements the legislature used to identify exempt direct sales in 1977-in-person solicitation and sales "in the home"-may no longer be appropriate to delineate some of the kinds of direct sales that the legislature intended to reach when it enacted that exemption. In any event, different models of direct sales have emerged because of technological, social, and economic changes, while the direct sales statute remains unchanged.
Similarly, although the legislature and the courts have a long history of deciding when one who provides services to another is an "employee" or an "independent contractor," the statute, last amended over a decade ago, uses concepts for identifying whether a business is "independently established" that are not meaningful when applied to many kinds of work relationships in the "gig economy." One consideration in determining whether a person is engaged in an independently established business is whether the person "maintains a business location" separate from the business or work location of the person for whom the services are provided or "[t]hat is in a portion of the person's residence and that portion is used primarily for the business." ORS 670.600(3)(a). Again, given new technology, a person's "business" may exist entirely on his or her laptop, tablet, or smart phone. And individuals may view their "business location" as wherever they and their device are located-the aforementioned coffee shop, the city library, or a shared workspace such as WeWork-or, if working at their residence, entirely from a deck chair on the porch. The existing statutes often can be useful in determining when a person is an employee or an independent contractor; however, because of the substantial changes in many sectors of the economy-in how work is done, where, by whom, and under what compensation **849 arrangements-the results courts reach in those cases may not be those that the legislature intended.
This case involves whether ACN is an employer of the sellers of its products for purposes of paying unemployment taxes on the money that it pays to the sellers. But similar issues can arise in the context of other state statutes, including workers compensation, construction contracting law, and tax withholding and related revenue issues. See, e.g. , S-W Floor Cover Shop v. Natl. Council on Comp. Ins. , 318 Or. 614, 872 P.2d 1 (1994) (considering whether carpet installers were independent contractors or "subject workers" for whom business must pay workers compensation insurance). Legal issues also have arisen across the country about the applicability of wage and hour laws, occupational safety and health rules, and similar statutes to Uber and Lyft drivers, and others in the so-called "on-demand" part of the new economy. See, e.g. , Oregon Bureau of Labor and Industries, Advisory Opinion of the Commissioner re: The Employment Status of Uber Drivers (Oct. 14, 2015). More broadly, policy advocates have suggested new ways to ensure that such workers can get access to benefits ordinarily associated with traditional employment, such as health insurance and a retirement plan of some kind.
State regulatory agencies, such as the Employment Division, the Bureau of Labor and Industries, the Department of Revenue, and others may have some statutory authority to revise their regulations to better fit emerging models of work. But legislative direction would permit more substantive changes and *733 would ensure that the policy issues are fully aired.
A careful review and revision of some of the existing statutes regarding the employment relationship would require the legislature to make various policy choices, and it is not our province to provide any particular guidance in that regard. Suffice it to say that some experts who have looked at these issues have proposed ways to provide certain benefits of the employment relationship to workers who do not meet the traditional definition of employee, see Harris & Krueger, A Proposal for Modernizing Labor Laws , while others stress "portability of benefits," and the need to avoid regulations **850 that could stifle market-driven innovations in work relationships. See James C. Capretta, The On-Demand Economy and Worker Benefits and Protections (2016). Whatever direction such legislative or administrative changes might take, it is apparent that existing statutes and regulations do not address the realities of important parts of today's work environment. If that legal framework can be updated to align contemporary workplace realities with the state's policy objectives, individual workers and employers-as well as the regulators and courts who apply the laws-will benefit.